UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

FILED

Dec 31  9 22 AM '03

Kevin HACKETT, plaintiff,

v.                                              No. 3:03cv395 (JBA)

Eileen STOREY, Edward BLANCHETTE,
    Anne FLITCRAFT, Jacqueline
    HARRIS, Timothy SILVIS, and
    Robert TRESTMAN, defendants.

**Ruling on Defendants' Motion to Dismiss Plaintiff's Second
Amended Complaint [Doc. #23]**

On March 6, 2003, plaintiff Kevin J. Hackett instituted the present action under 42 U.S.C. § 1983 against the defendants, members of the State of Connecticut's Medical Examining Board ("MEB"), alleging violation of his right to equal protection under the Fourteenth Amendment to the United States Constitution in connection with the MEB's denial of three applications for disability benefits and subsequent reaffirmations of those denials.[1] Hackett sues the defendant doctors only in their official capacities, seeking a permanent injunction requiring defendants to declare him eligible for disability benefits or ordering benefits payments to him. Because Hackett's cause of action is barred by the doctrine of res judicata, defendants'

---

[1] The MEB is comprised of physicians appointed by the Governor who determine "whether [an] applicant for disability retirement benefits is entitled thereto." Conn. Gen. Stat. § 5-169(c). Entitlement requires that, "while in state service," an applicant "becomes permanently disabled." Conn. Gen. Stat. § 5-169(a)(non-service connected disability) and (b)(service connected disability). The MEB reports its findings to the State Employees Retirement Commission, see Conn. Gen. Stat. § 5-169(c), which in turn is responsible for the ultimate benefits decision, see Conn. Gen. Stat. § 5-155.

1

motion to dismiss [Doc. #23] pursuant to Fed. R. Civ. P. 12(b)(6) is GRANTED.

## I. Factual Background

There has been an eleven year course of administrative and judicial proceedings predating the institution of this lawsuit, including two decisions of this court: Hackett v. State of Connecticut, Medical Examining Board, Retirement Division of the Office of the Comptroller, 3:96CV2422 (GLG)(D. Conn. Mar. 26, 1997)("Hackett I") and Hackett v. State of Connecticut, Medical Examining Board, Retirement Division, Office of the Comptroller, 3:02CV895 (AVC)(D. Conn. Feb. 27, 2003), and five decisions of the MEB: three denials of Hackett's applications for disability benefits (October 30, 1992, May 27, 1994, and December 1, 1995), and two reaffirmations of those denials (July 26, 1996, and December 4, 2000).

While Hackett's pro se complaint in Hackett I, was "far from a model of clarity," Hackett I, slip. op. at 1, it was construed liberally to assert claims under the Americans with Disabilities Act ("ADA") and Title VII of the Civil Rights Act of 1964 ("Title VII"), in addition to a claim for breach of contract, noting that the "gravamen of the plaintiff's claims is that the State of Connecticut must adhere to the Social Security Administration's determination [which found Hackett to be totally disabled] and

2

that its failure to do so constitutes discrimination," id. at 6.[2] The ruling sets out the factual background from the first four MEB decisions as well as Hackett's employment history from his administrative complaints to the Connecticut Commission on Human Rights and Opportunities and the Equal Employment Opportunity Commission. See id. at 3-6. Judge Goettel dismissed the statutory claims pursuant to Fed. R. Civ. P. 12(b)(6) and the breach of contract claim pursuant to Fed. R. Civ. P. 12(b)(1). See id. at 7-9.[3]

Here, the Second Amended Complaint [Doc. #26] alleges that defendants' denials of his applications for disability retirement benefits in 1992, 1994, and 1995, and reaffirmations of those

---

[2] Excerpts from Hackett's earlier complaint are set out in Judge Gerard Goettel's opinion:

> Discrimination is charged based upon a medical disability. The State of Connecticut continues to discriminate against me by refusing me disability retirement benefits....
>
> I am disabled since April 16, 1991, the first day of my sick leave (unpaid leave), by the Federal Social Security Administration. The State of Connecticut does not recognize me as disabled since April 16, 1991, as the S.S.A. does....
>
> I claim that the State of Connecticut, by picking and choosing which Federally disabled people are entitled to State disability benefits, discriminates illegally against myself, while I am Federally disabled and I am not recognized as disabled by the State of Connecticut, for the sole purpose of withholding benefits....
>
> I assert that the refusal to equally distribute the fringe benefit of disability retirement is discriminatory.

Hackett I, slip. op. at 2.

[3] The U.S. Court of Appeals for the Second Circuit entered an order on November 25, 1997 dismissing Hackett's appeal as lacking "any basis in law or fact." Defs.' Mem. in Supp. [Doc. #24] Ex. K.

3

denials in 1996 and 2000 violated his constitutional right to equal protection because defendants denied Hackett benefits while contemporaneously granting them to similarly-situated state employees, notwithstanding the Social Security Administration's findings of disability. Hackett further alleges that defendants' conduct was intentional, arbitrary, irrational, unreasonable, and malicious.

## II.   Fed. R. Civ. P. 12(b)(6) Standard

Fed. R. Civ. P. 12(b)(6) is an appropriate procedural vehicle for testing a complaint with the defense of res judicata. See Waldman v. Village of Kiryas Joel, 207 F.3d 105 (2d Cir. 2000); Conepco, Inc. v. Roll Intern., 231 F.3d 82, 86 (2d Cir. 2000); Day v. Moscow, 955 F.2d 807, 811 (2d Cir. 1992). "The task of the court in ruling on a Rule 12(b)(6) motion is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof. ... Although bald assertions and conclusions of law are insufficient, the pleading standard is nonetheless a liberal one." Cooper v. Parsky, 140 F.3d 433, 440 (2d Cir. 1998) (internal quotations and citations omitted). A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Conley

4

v. Gibson, 355 U.S. 41, 45-46 (1957).

Determining the sufficiency of a plaintiff's claim for Rule 12(b)(6) purposes is not limited to the factual allegations in the complaint but may include consideration of "documents attached to the complaint as exhibits or incorporated in it by reference, to matters of which judicial notice may be taken [under Fed. R. Evid. 201], or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." Brass v. Am. Film. Techs. Inc., 987 F.2d 142, 150 (2d Cir. 1993); see also Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47-48 (2d Cir. 1991); Kramer v. Time Warner Inc., 937 F.2d 767, 773-74 (2d Cir. 1991). Judicial notice is permitted of a fact "not subject to reasonable dispute in that it is ... capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The Court may thus judicially notice prior pleadings, orders, judgments, and other items appearing in the Court's records of prior litigation that is closely related to the case sub judice, especially where a res judicata defense is predicated on facts not disputed in the earlier litigation. See Day, 955 F.2d at 811; Liberty Mut. Co. v. Rotches Pork Packers, Inc., 969 F.2d 1384, 1388-1389 (2d Cir. 1992); see also 1 Weinstein's Federal Evidence § 201.12[3] at 201-29 to 201-34, 201-40 (2d ed. 2003). Accordingly, without converting

5

defendants' motion into one for summary judgment, the Court will take judicial notice of the record in Hackett I, including plaintiff's complaint and related judicial rulings detailing the undisputed factual background to Hackett's failed applications for disability benefits, including the first four MEB decisions.

### III. Res Judicata

"Res judicata ... makes a final, valid judgment conclusive on the parties, and those in privity with them, as to all matters, fact and law, [that] were or should have been adjudicated in the proceeding." Waldman, 207 F.3d at 108 (quotation omitted); see also Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981).

"In deciding whether a suit is barred by res judicata, it must first be determined that the second suit involves the same claim - - or nucleus of operative fact - - as the first suit." Waldman, 207 F.3d at 108 (quotations omitted). "[T]hree indicia [are] crucial to this determination ... whether the underlying facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectation." Id. (quotations omitted).

Defendants argue that dismissal under the doctrine of res judicata is appropriate because Hackett should have brought his

6

equal protection claim as part of Hackett I.[4] In response, plaintiff argues that he could not have brought his class of one equal protection claim in the earlier action because the Supreme Court's decision in Village of Willowbrook v. Olech, 528 U.S. 562 (2000)(per curiam) created a new cause of action not available in 1996 and not formerly recognized by the Second Circuit. See Pl.'s Opp'n [Doc. #25] at 4 (unnumbered). The Court disagrees.

The instant action involves the same nucleus of operative facts as Hackett I. Hackett complains of the MEB intentionally treating him differently than other similarly-situated state employees in denying him disability retirement benefits, and seeks judicial declaration of eligibility for disability benefits to be paid by defendants. He points to the following alleged facts, all but one of which occurred prior to December 3, 1996,

---

[4] Hackett does not dispute that dismissal of his Title VII and ADA claims in Hackett I pursuant to Fed. R. Civ. P. 12(b)(6) constitutes a final judgment on the merits. See Exchange Nat'l Bank of Chicago v. Touche Ross & Co., 544 F.2d 1126, 1130-31 (2d Cir. 1976)(Friendly, J.)("[J]udgments under Rule 12(b)(6) are on the merits, with res judicata effects...."); see also Sweater Bee by Banff, Ltd. v. Manhattan Indus., Inc., 754 F.2d 457, 462 (2d Cir. 1985).

In addition, Hackett does not dispute defendants' contention that they stand in privity to defendant MEB in Hackett I. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989)("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."); Kentucky v. Graham, 473 U.S. 159, 165-66 (1985); Gray v. Lacke, 885 F.2d 399, 405 (7th Cir. 1989)("[I]n official-capacity suits, privity exists between government entities and their employees."); Gregory v. Chehi, 843 F.2d 111, 120 (3rd Cir. 1988)("[I]n the claim preclusion context, governmental officials sued in their official capacities for actions taken in the course of their duties are considered in privity with the governmental body. They may invoke a judgment in favor of the governmental entity as may that body itself.").

when Hackett I was filed[5]:

1. Hackett was employed by the State of Connecticut, Department of Administrative Services, as a purchasing services officer, beginning in 1982 after having previously worked for the State of Connecticut in other capacities.

2. In 1985, Hackett was involved in a motorcycle accident resulting in an above-the-knee amputation of his left leg.

3. In approximately 1986, Hackett returned to work and thereafter performed his duties satisfactorily.

4. Hackett's employment with the State of Connecticut was involuntarily terminated on approximately May 24, 1991.

5. Hackett continued to suffer severe pain in the stump of his amputated leg and from amblyopia.

6. In December 1992, Hackett was struck by a motor vehicle and incurred serious injuries to his right leg and his shoulder.

7. In approximately February 1993, Hackett was diagnosed as suffering from a cyst on his spine which since then has compressed the nerve roots and caused severe and disabling pain.

8. Beginning in August 1992, Hackett regularly applied for both service-connected and non-service-connected disability benefits. Defendants denied such applications on October 30, 1992, May 27, 1994, December 1, 1995, July 26, 1996, and December 4, 2000.

9. At some point in time, the SSA determined, after full evidentiary hearings, that the plaintiff is totally disabled from working and has been so disabled since at least May 24, 1991.

In Hackett I, plaintiff alleged violations of Title VII and ADA, and a common law breach of contract claim, focusing on the

---

[5] The last reaffirmation of denial by the MEB occurred on December 4, 2000.

8

MEB's alleged discrimination against him in relation to other state employees and seeking the same injunctive relief as in this case. The virtual complete identity of facts between the present case and Hackett I demonstrates that they are not only related in time, space, origin, and motivation, but in fact are exactly the same. Obviously, identical facts would have formed a convenient trial unit with the same witnesses and evidence, and treating identical facts as a single transaction or a series of related transactions would conform to the parties' expectations.

Plaintiff's argument that he has asserted a new legal theory, the class of one equal protection claim discussed in Village of Willowbrook v. Olech, 528 U.S. 562 (2000)(per curiam), overlooks the reality that the Second Circuit has long recognized class of one equal protection claims. See Giordano v. City of New York, 274 F.3d 740, 750-51 (2d Cir. 2001)(discussing history of pre- and post-Olech class of one equal protection claims, including the holding in LeClair v. Saunders, 627 F.2d 606, 609-10 (2d Cir. 1980)). Pre-Olech, such a claim required a plaintiff to demonstrate "(1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure

9

a person."  Id.[6]  Thus, a class of one equal protection claim was available to Hackett at the time he filed Hackett I.[7]

Because Hackett could have asserted a class of one equal protection claim in 1996, he now "cannot avoid the effects of res judicata by splitting his claim into various suits, based on different legal theories."  Waldman, 207 F.3d at 110 (quotation omitted).  The doctrine of res judicata looks to the similarity of the facts, asking whether "the facts *essential to the second* were [already] present in the first."  Id. at 111 (quotation omitted and emphasis in original).  The facts on which Hackett relies for this suit were not only present but taken into

---

[6] To date, the Second Circuit has declined to decide whether these two elements were altered by Olech, specifically, whether the second element continues after Olech to require a showing of ill motivation or can be supported solely by evidence of irrational and wholly arbitrary conduct in conjunction with the intentional disparate treatment.  See id. at 751; see also DeMuria v. Hawkes, 328 F.3d 704, 707 and n.2 (2003); Harlen Assocs. v. Incorporated Village of Mineola, 273 F.3d 494, 499-500 (2d Cir. 2001).

[7] Even if it is ultimately decided that Olech decreases the proof burden on a plaintiff by removing the requirement of an improper motivation, such a result would not alter the result here because res judicata effects are not altered by an intervening change in the governing law.  See Reed v. Allen, 286 U.S. 191, 201 (1932)("These decisions constitute applications of the general and well settled rule that a judgment, not set aside on appeal or otherwise, is equally effective as an estoppel upon the points decided, whether the decision be right or wrong".); NLRB v. Coca-Cola Bottling Co. of Buffalo, Inc., 55 F.3d 74, 77 (2d Cir. 1995)("The 'law of the case' doctrine, unlike the rule of res judicata ... authorizes departure from a prior ruling in the event of an intervening change in the controlling law.")(quotation and citation omitted); see also Moitie, 452 U.S. at 398 ("Res judicata consequences of a final, unappealed judgment on the merits [are not] altered by the fact that the judgment may have been wrong or rested on a legal principle subsequently overruled in another case. ... [A]n erroneous conclusion reached by the court in the first suit does not deprive the defendants in the second action of their right to rely upon the plea of res judicata.... A judgment merely voidable because based upon an erroneous view of the law is not open to collateral attack, but can be corrected only by a direct review and not by bringing another action upon the same cause [of action].").

consideration by the court in <u>Hackett I</u>.

Although not in opposition to defendants' res judicata argument, Hackett's brief suggests that the MEB's reaffirmation in 2000 of its previous denials is essential to his equal protection claim because it constitutes an independently actionable event occurring after the filing of <u>Hackett I</u>, and as such cannot be dismissed under the doctrine of res judicata. <u>See</u> Pl.'s Opp'n [Doc. #25] at 6 (unnumbered). While "[i]t is true that res judicata will not bar a suit based upon legally sufficient acts occurring *after* the filing of a prior suit that was itself based upon earlier acts," <u>Waldman</u>, 207 F.3d at 113 (emphasis in original), the "occurrence of another like incident," <u>id.</u> is not always sufficient to prevent the res judicata effects of an earlier disposition. <u>See</u> <u>e.g.</u> <u>id.</u> at 113-14; <u>see generally</u> <u>Storey v. Cello Holdings, L.L.C.</u>, 347 F.3d 370, 383-85 (2d Cir. 2003). The fifth and final MEB decision, which post-dated the filing of <u>Hackett I</u>, illustrates this insufficiency.

The MEB's action of December 4, 2000 reaffirmed the MEB's four earlier decisions denying Hackett's application for disability retirement, concluding after a "hearing for reconsideration" that "[t]he new material submitted by the applicant does not materially add to the information previously provided and does not change the decisions of the Board rendered

11

October 30, 1992, May 27, 1994, December 1, 1995 and July 26, 1996." Defs.' Mem. in Supp. [Doc. #24] Ex. F.; see also Conn. Gen. Stat. § 5-169(d)[8]. Because the four previous denials by the MEB were predicated on the same facts as the fifth, "it is simply not plausible to characterize (Hackett's) claim as one based in any significant way upon post-(Hackett I) facts" as "[t]he new allegation[] made in the present complaint [does] not ... to any degree not already demonstrated by the (Hackett I) facts ... establish (Hackett's equal protection claim)." Waldman, 207 F.3d at 113. Hackett's Second Amended Complaint lumps together all five MEB denials as support for his equal protection violation, see Second Am. Compl. [Doc. #26] ¶¶. 13-18, but fails to assert any additional facts beyond those already considered in Hackett I regarding his physical maladies, with respect to which the MEB repeatedly rejected Hackett's disability applications on the grounds that such maladies did not demonstrate Hackett had become permanently disabled while in state service. Thus, plaintiff's equal protection claim could have been brought in Hackett I and plaintiff is barred from seeking the relief he requests in this action.

---

[8] "No reconsideration of a decision concerning eligibility for a disability retirement allowance or the discontinuance of such allowances shall be made by the board unless a member, upon application to the board for a redetermination, discloses additional facts concerning his condition at the date of termination of employment."

12

**IV. Conclusion**

For the reasons set forth above, defendants' motion to dismiss [Doc. #23] is GRANTED. The clerk is directed to close this case.

IT IS SO ORDERED.

/s/ Janet Bond Arterton
Janet Bond Arterton, U.S.D.J.

**Dated at New Haven, Connecticut, this 30th day of December, 2003.**

13